**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| REV ROBOTICS LLC, | Case No. 1:25-cv-00275-JLT-FJS |
| Plaintiff, | ORDER REGARDING CLAIM CONSTRUCTION |
| v. | |
| WESTCOAST PRODUCTS & DESIGN LLC, | (Docs. 26, 28, 31, 32) |
| Defendant. | |

## I.   INTRODUCTION

REV Robotics is a Texas company which specializes in mechanical and robotic parts; and WestCoast Products & Design ("WCP") is a direct competitor based in California. (Doc. 1 at ¶¶ 1–3.) Plaintiff owns U.S. Patent No. 12,115,813 (the "'813 Patent") at issue in this case. Claim 6, the only Asserted Claim, recites "an assembly for rotating a wheel-shaped object that comprises:"

> the wheel-shaped object that comprises an aperture that includes an outer periphery coinciding with a first reference circle with a first radius and an inner periphery coinciding with a second reference circle with a second radius that is less than the first radius, wherein the inner periphery defines a plurality of inner peripheral surfaces forming elongated arcs that are concentric with the first reference circle and the second reference circle; and
>
> one or more insertion articles dimensioned to be inserted into the aperture, wherein the one or more insertion articles provides the assembly with an option of a live axle and a dead axle, and wherein:
>
>> the one or more insertion articles includes a first shaft with a splined outer surface dimensioned to engage the outer periphery and the inner periphery of the aperture to provide the assembly with the live axle; and

1

the one or more insertion articles includes a bearing comprising:

an outer surface dimensioned to engage only the inner peripheral surfaces of the aperture, and

a bore that is concentric with the first reference circle and the second reference circle and sized to receive a second shaft to provide the assembly with the dead axle.

'813 Patent col. 24 ll. 26–54.

Plaintiff filed the instant action on March 4, 2025, only asserting claim 6 of the '813 Patent and only alleging contributory and inducement liability, but not direct infringement by Defendant. (Doc. 1 at ¶¶ 8–9.) Currently before the Court are the claim construction briefs. (Docs. 28, 31, 32.) As indicated, (Doc. 33), the Court took the matter under submission without an oral *Markman* hearing.

## II.    ANALYSIS

### A.  Legal Background

"The words of a claim are generally given their ordinary and customary meaning as understood by a person of ordinary skill in the art when read in the context of the specification and prosecution history." *Thorner v. Sony Computer Ent. Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012) (citing *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc)). The Federal Circuit has explained that "[t]here are only two exceptions to this general rule: 1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of a claim term either in the specification or during prosecution." *Id*. (citing *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1580 (Fed. Cir. 1996)).

### B.  "Splined Outer Surface," "Periphery," "Aperture," "Concentric," "Radius," "Live Axle" and "Dead Axle"

The Court finds no persuasive need or justification to define these basic terms beyond their ordinary and customary meaning. First, there is little doubt or dispute that these terms are well known to ordinarily skilled mechanical engineers. Plaintiff's ***only*** argument[1] in favor of

---

[1] Plaintiff also argues that there is a need to "'clarify' the claim scope." (Doc. 32 at 4.) But Plaintiff's

further construing these terms is "to aid the jury," in case "someone does not already know the[ir] meaning." (Doc. 28 at 5–17.) This case is, realistically speaking, at least two years away from jury trial—and the Court finds it far too early to consider potential jury confusion. Second, the Court wishes to avoid accidentally or prematurely narrowing the scope of the litigation, not without a better understanding of the dispute and the relevant technology.[2] Third, the parties have not shown, directly or indirectly, how the proposed constructions may impact the outcome of this case. As a result, the Court declines to offer a quasi-advisory opinion as to their meaning, except directing the parties to rely on the ordinary meaning of those terms.

## C. "Coinciding With"

Defendant argues that the word "coinciding" should be construed to mean "occupying the same place and lying directly on top of" something, whereas Plaintiff contends that the Court should rely on the plain meaning of the word. (Doc. 28 at 17.) Specifically, Plaintiff argues, among other things, that neither the specification nor the two dictionary definitions supplied by Defendant support the addition of "lying directly on top of." (*Id*. at 18.) In response, Defendant appears to disclaim reliance on the "lying directly on top of" language and, instead, stresses that "coinciding" requires a complete overlap. (Doc. 31 at 13–14.)

The Court therefore interprets the briefs as suggesting that the crux of Plaintiff's objection to Defendant's proposed instruction is the phrase "lying directly on top of," rather than any dispute over the required overlap. (*See* Doc. 32 at 7.) Put differently, the parties' disagreement appears to have been caused by little more than a simple misunderstanding between Plaintiff and

opening brief does not meaningfully argue how the proposed construction of these terms may affect the claim scope; and the Court declines to consider this vague, under-developed argument raised for the first time in the reply brief. *See Grange Ins. Ass'n v. Sran*, 184 F. Supp. 3d 799, 819 (E.D. Cal. 2016). Plaintiff further speculates, without evidence, that there would be a parade of horribles if this Court declines to construe *these specific terms*. (*See* Doc. 32 at 5–6.) Should it become necessary, this Court is more than capable of striking impermissible expert testimony or levying sanctions; and Defendant would bear the associated consequences.

[2] Apart from the briefs and a vague, barebone complaint that may not survive a Rule 12(b)(6) motion, the Court has no other information about this case. The parties have done little more than throwing a patent at the Court and saying, "Construe it for us." Tellingly, Plaintiff's opening brief delved immediately into substantive discussions, with no attempt to "frame" the dispute and explain the relevant technology to the Court. (Doc. 28 at 4.) Nor did Defendant. (Doc. 31 at 5.)

As an aside, and from the Court's uninformed perspective, claim 6 appears to direct a skilled artisan to insert a live axle (a "male" splined shaft) or a dead axle (a bearing and a shaft) into a "female" splined aperture. If so, claim 6 does not appear to be a non-obvious utility patent claim.

3

Defendant that could have been resolved through a meaningful, serious discussion during the parties' meet-and-confer. Accordingly, the Court finds no need to further construe the "coinciding" limitation beyond that, when read in light of the specification, it requires a complete overlap. (*See* Doc. 31 at 13–14.)

### D. "Splined outer surface dimensioned to engage the outer periphery and the inner periphery of the aperture"

Plaintiff urges the Court to adopt (a) its proposed construction for "splined outer surface," "periphery," and "aperture"—which the Court has rejected above in favor of their plain meaning—and (b) the plain meaning for the rest of this claim limitation. (Doc. 28 at 19–20.) Defendant, however, has failed to oppose Plaintiff's argument with respect to the latter. (*See generally* Doc. 31.) As such, the Court adopts the plain meaning for this claim limitation without qualification. *See Egenera, Inc. v. Cisco Sys., Inc.*, 141 F.4th 1350, 1361–62 (Fed. Cir. 2025) (discussing waiver); *Kroeger v. Vertex Aerospace LLC*, No. CV 20-3030-JFW(AGRx), 2020 WL 3546086, at *8 (C.D. Cal. June 30, 2020) (collecting cases and noting that failure to respond to an argument in an opening brief constitutes waiver).

### E. "Wherein one or more insertion articles provides the assembly with an option of a live axle and a dead axle"

The Court now turns to the parties' dispute over the claim limitation, "Wherein one or more insertion articles provides the assembly with an option of a live axle and a dead axle." Plaintiff argues that this limitation should be given plain meaning except for "live axle" and "dead axle." (Doc. 28 at 18–19.) Defendant argues that this claim limitation is indefinite because it is "nonsensical for a single insertion article to be optionally two things at the same time (a live axle and a dead axle) when those two things are separate and distinct from each other. . . ." (Doc. 31 at 14.) Though it bears the burden of establishing indefiniteness, Defendant has not clearly directed the Court's attention to any binding or persuasive authority addressing an analogous situation—*i.e.*, one that addresses the "and" versus "or" distinction, or the effect of the word "option," in the context of claim construction and definiteness, and the Court declines to do the parties' job for them. For now, the Court rejects Defendant's argument as to indefiniteness as

unsupported.

Moreover, because the Court agrees with Defendant's argument that "live axle" and "dead axle" should be given their plain and ordinary meaning, the Court further adopts the plain meaning for this entire claim limitation.

**F. Other Matters**

It should be obvious to a person of ordinary skill in patent litigation that the brevity of this order reflects the amount of effort that the parties put into their briefing and the strength of their arguments.[3] Moving forward, the parties **SHALL** engage in serious meet-and-confer efforts *before* filing their respective briefs and their briefs **SHALL** meaningfully engage with the relevant issues at a detailed, substantive level.

### III.    CONCLUSION

Based upon all the foregoing, the Court **ORDERS:**

(1) The "coinciding" limitation means a complete overlap.

(2) All other disputed limitations are given their plain and ordinary meaning.

(3) Defendant's indefiniteness argument is rejected without prejudice.

IT IS SO ORDERED.

Dated:   July 8, 2026

_____
UNITED STATES DISTRICT JUDGE

---

[3] This order already details many of the parties' lackadaisical briefing, but another example is Plaintiff's overly lengthy block quote setting forth the legal framework for judicial correction of a patent but without a substantive discussion of how to apply it to the instant action. (Doc. 32 at 9–10.) Also, this overburdened Court does not have the time, energy, or resources to deal with petty disputes over the definition of words like "radius."